# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

**SEALED**

| | |
|---|---|
| United States of America<br>v.<br><br>Guy Galanti<br><br>_Defendant(s)_ | Case No. 25-5412mJ |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning at least as early as June 1, 2025, and continuing to the present, in the District of Arizona, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1832(a)(5) | Conspiracy to Steal Trade Secrets |

This criminal complaint is based on these facts:

**See attached Affidavit of Probable Cause**

☒ Continued on the attached sheet.

Reviewed by AUSA: Raymond K. Woo  _RW_

_____
Complainant's signature

LAURA D'CATO, FBI AGENT
_Printed name and title_

Sworn to and signed telephonically.

Date: Sept. 10, 2025 @ 1:29 pm

City and State: Phoenix, Arizona

_____
Judge's signature

MAGISTRATE JUDGE DEBORAH M. FINE
_Printed name and title_

## AFFIDAVIT OF PROBABLE CAUSE

I, Special Agent Laura D'Cato, being first duly sworn, hereby state:

### INTRODUCTION

1. As described further below, this affidavit sets forth probable cause that beginning at least as early as June 1, 2025, and continuing to the present, in the District of Arizona, the defendant Guy GALANTI ("GALANTI") conspired with others to steal trade secrets in violation of 18 U.S.C. § 1832(a)(5) from a semi-conductor technology company ("Company-1").

### AGENT BACKGROUND

2. I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately September 2018. Since September 2019 I have exclusively worked counterintelligence investigations at the FBI Phoenix Field Office. I spent 31 weeks in Quantico, Virginia, at the New Agent Basic Field Training Course, where I received instruction on conducting federal investigations, legal statutes, probable cause, elements of crime and the Fourth Amendment. Prior to joining the FBI, I was a Sheriff's Deputy in Orange County, Florida. During my employment as a Sheriff's Deputy, I investigated various state crimes of all levels. I attended the Valencia College School of Public Safety, a Florida Department of Law Enforcement certified police academy in Orlando, Florida, for 20 weeks, where I received legal training on the Fourth Amendment.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, investigators, or

witnesses. This affidavit is intended merely to show that there is sufficient probable cause for issuance of the complaint and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

### *Company-1 Reports GALANTI's Potential Theft of Trade Secrets to the FBI*

4.     Near the end of August 2025, Company-1 contacted FBI Phoenix to report a potential theft of trade secrets. FBI Agents met with representatives of Company-1 between approximately August 27 and September 8, 2025, to review information and interview Company-1 employees. Agents learned Company-1 offers remanufactured semiconductor testing machines that incorporate proprietary modifications to the software and equipment. Company-1's modifications to the software and equipment are proprietary and not public. To protect its proprietary information, Company-1 utilizes a variety of safety and security measures, to include password protections, the storage of proprietary information in secured servers and locked containers, and requiring employees to sign non-disclosure agreements to prohibit the disclosure of Company-1's information. Agents also learned the following information about GALANTI.

5.     Sometime in the beginning of August 2025, Company-1 learned that an employee ("Employee-1") had offered to assist a former Company-1 employee ("Person-1") with some work. This concerned Company-1 as Person-1 had been soliciting Company-1 customers by offering what appeared to be the same or similar technology and services offered by Company-1. Company-1 sued Person-1 on August 15, 2025, alleging a violation of Company-1's non-disclosure agreement.

2

6. On or about August 11, 2025, Company-1's Vice President ("VP-1") observed communications between Person-1, Employee-1, and GALANTI on Employee-1's work laptop. As a result, VP-1 had GALANTI's work account locked and required GALANTI to return his work laptop to Company-1.

7. VP-1 then reviewed GALANTI's laptop and observed messages between GALANTI and Person-1. In one exchange in June 2025, GALANTI provided Person-1 with photos of a proprietary product ("Product-1") of Company-1 and explained its operation. Per VP-1, Product-1 is a key component to Company-1's business and is part of Company-1's proprietary system to test novel materials used in the manufacture of semiconductors.

8. On August 25, 2025, Company-1 terminated GALANTI and retrieved GALANTI's work-assigned iPhone, which was the property of Company-1. GALANTI was interviewed by Company-1 and denied misappropriating any of Company-1's intellectual property.

9. Company-1 conducted further investigation and discovered that GALANTI had requested an usual number of hard drives from Company-1's IT Department over several months. GALANTI would request a hard drive for work purposes but then seek another drive by claiming the drive given to him was not properly operating. Per Company-1, it utilizes specialized hard drives to transfer their proprietary software from Company-1's internal system to remanufactured semiconductor machines. These drives have specialized software installed on them and cost Company-1 approximately $5,000 apiece. Per

3

Company-1, it appears that some of the hard drives provided to GALANTI are now unaccounted for.

10. VP-1 reviewed GALANTI's work-assigned iPhone (item tag #0000044). In the phone, VP-1 observed WhatsApp messages where GALANTI appeared to assist Person-1 with projects at his new company in a foreign nation ("International Company-1"). VP-1 observed an exchange where GALANTI provided information on how Company-1 achieved their process with a glass interposer. VP-1 stated Company-1's process with a glass interposer is cutting edge technology and proprietary to Company-1.

11. VP-1 discovered a FedEx label saved on GALANTI's work assigned iPhone and provided it to Agents. The label was dated July 22, 2025, and reflected "1 hard drive" being mailed by GALANTI, listed Company-1's office address, and was addressed to a person in a foreign nation. Per Company-1, this was not an authorized Company-1 transaction because Company-1 does not sell products to persons or entities in this foreign nation.

12. VP-1 also discovered a purchase order ("PO") on GALANTI's work-assigned iPhone. A copy of the PO was provided to Agents. The purchase order was dated on August 5, 2025, and reflected a sale of "G4 full disk image set" from "770 Global" to a certain company ("International Company-1") in a foreign nation for $17,000. The PO listed GALANTI's spouse as the person associated with 770 Global, GALANTI's home address for 770 Global's address, GALANTI's phone number, and a Wells Fargo bank

4

account that appears to be associated with GALANTI's spouse. The PO also noted an initial down payment of $6,000 would be made to the Wells Fargo bank account.

13. VP-1 identified "G4 full disk image set" as data that contains Company-1's proprietary modifications to a certain software. VP-1 explained the G4 software represents a significant piece of Company-1's business and provides Company-1 with a competitive edge over other manufacturers.

14. Company-1 provided the FBI with a handwritten note discovered on GALANTI's desk after he was terminated. The handwritten note made reference to structuring payments to avoid a financial institutions from filing a Currency Transaction Report with the government. The handwritten note included details about keeping transactions to less than $10,000.00 and transferring less than $10,000.00 twice a month into three accounts.

15. Company-1 also provided the FBI with a non-disclosure agreement ("NDA") that had been signed by GALANTI in July 2023. The agreement prohibits disclosure of Company-1's information without its permission.

### *FBI Conducts a Search Warrant of GALANTI's Residence and Subsequent Review of Items*

16. On September 3, 2025, the FBI searched GALANTI's residence in Scottsdale, Arizona, pursuant to a search warrant (Case No. 25-6358MB). In a home office, the FBI seized physical purchase orders of "770 Global." At least one of the purchase orders reflected a sale of Company-1's G4 software to Person-1 for over $19,000.

5

### *Voluntary Interview of GALANTI*

17.     On September 3, GALANTI agreed to speak to the FBI voluntarily. GALANTI admitted to digitally transferring G4 software to Person-1. Per GALANTI, Person-1 advised him to use his spouse's name on the documentation to avoid Company-1's detection.

### **CONCLUSION**

18.     Based on the foregoing, there is probable cause to believe that beginning at least as early as June 1, 2025, and continuing to the present, GALANTI conspired with others to commit the crime of Conspiracy to Commit Trade Secret Theft, in violation of 18 U.S.C. § 1832(a)(5).

///

///

///

19. This affidavit is being sworn telephonically before a United States Magistrate Judge legally authorized to administer an oath for this purpose. I have thoroughly reviewed the affidavit and attest that there is sufficient evidence to establish probable cause that the defendant committed the crimes alleged.

Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

Laura D'Cato
Special Agent, FBI

Subscribed and sworn to me telephonically this 10 day of September 2025. 1:29pm

HONORABLE DEBORAH FINE
United States Magistrate Judge